**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| CHRIMAR SYSTEMS, INC. and CHRIMAR HOLDING COMPANY, LLC, | § § § § § § § § § § | 6:15-cv-00638-JRG-JDL |
| Plaintiffs, | | |
| vs. | | |
| RUCKUS WIRELESS, INC., | | |
| Defendant. | | |

**DEFENDANT RUCKUS WIRELESS, INC.'S MOTION TO TRANSFER
VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

    A. Procedural History of this Action ............................................................................ 2

    B. Ruckus Wireless Has a Strong Connection to the Northern District of California ................................................................................................................. 2

    C. The Chrimar Plaintiffs Do Not Have a Substantive Presence in this District ..................................................................................................................... 3

    D. Relevant Non-Party Witnesses and Evidence are Not Located in the Eastern District of Texas ......................................................................................... 4

    E. The Chrimar Plaintiffs Are Engaged in Patent Litigation Related to this Patent Family in the Northern District of California, the Eastern District of Michigan and this District ................................................................ 5

III. ARGUMENT .........................................................................................................................6

    A. Legal Standard ......................................................................................................... 6

    B. This Action Could Have Been Brought in California ........................................... 8

    C. The Private Interest Factors Favors Transfer ...................................................... 8

    D. The Public Interest Factors Collectively Favor Transfer ................................. 14

IV. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*ACQIS LLC v. EMC Corp.*, No. 6:13-CV-639, 2014 WL 5485900 (E.D. Tex. Sept. 10, 2014) ......................................................................................................... 10

*In re Apple, Inc.*, 581 F. App'x 886 (Fed. Cir. 2014), cert. denied sub nom. *EON Corp. IP Holdings, LLC v. Apple Inc.,* 135 S. Ct. 1846 (2015) .......................................... 7, 12

*DSS Technology Management, Inc., v. Apple, Inc.*, 2014 WL 6847569) (E.D. Tex. Nov. 7, 2014) ................................................................................................................ 11, 13

*Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761 (E.D. Tex. 2009) ................................................ 8

*In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009) ................................................................ *Passim*

*In re Hoffman-La Roche, Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ..................................................... 12

*In re Microsoft Corporation*, 630 F.3d 1361 (Fed. Cir. 2011) ..................................................... 9-10

*In re Morgan Stanley*, 417 F. App'x 947 (Fed. Cir. 2011) ............................................................... 7

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) ......................................................... 7, 11

*Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772 (E.D. Tex. 2009) .................................................................................................................. 8

*Software Rights Archive, LLC v. Google, Inc.*, Case No. 2:07-cv-511, 2010 U.S. Dist. LEXIS 73972 (E.D. Tex. July 22, 2010) ............................................................ 10

*In re TS Tech United States Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ................................... 6-7, 15

*In re Verizon Bus. Network Serv. Inc.*, 635 F.3d 559 (Fed. Cir. 2011) ................................. 7-8, 13

*In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ................................................................... 10

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) .............................................. 6-8, 14

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) ..................................................... 10

**Statutes**

28 U.S.C. § 1391 ............................................................................................................................. 8

28 U.S.C. § 1400(b) ........................................................................................................................ 8

28 U.S.C. § 1404(a) .............................................................................................................. 1, 6-7, 10

Defendant Ruckus Wireless, Inc. ("Ruckus Wireless") moves to transfer this patent infringement action to the Northern District of California, pursuant to 28 U.S.C. § 1404(a).

## I.  INTRODUCTION

This lawsuit is between northern California-based Ruckus Wireless, on the one hand, and Michigan-based Chrimar Systems, Inc. ("CMS") and its made-for-litigation affiliate, Chrimar Holding Company, LLC ("Chrimar Holding"), on the other.[1]  Ruckus Wireless is headquartered in Sunnyvale, California and, with the exception of some sales representatives and a handful of telecommuters, all of its U.S.-based employees are located in the Northern District of California. In fact, the engineering, marketing, sales, product management, operational and financial reporting departments with knowledge of the accused Ruckus Wireless products are based in and managed from the Sunnyvale, California headquarters.  Likewise, the engineering, marketing, sales, product management, operational and financial reporting electronic data and documents related to the accused products are located in or are accessed in the normal course of business from Sunnyvale.  As such, an overwhelming majority of the relevant evidence and witnesses in this case is located in the Northern District of California.

By comparison, there does not appear to be any material information in Texas.  CMS has had a principle place of business in Michigan since 1993 and does not appear to have an office in this District.  And although its affiliate, Chrimar Holding, purports to have an office sharing space in Longview, Texas, the Chrimar Plaintiffs have not yet identified any evidence that is located in Texas and is relevant and material to their claims against Ruckus Wireless.

Given these facts, the Northern District of California is the clearly more convenient forum and this case should be transferred there.

---

[1] CMS and Chrimar Holdings are collectively referred to as the "Chrimar Plaintiffs."

## II.     FACTUAL BACKGROUND

### A.     Procedural History of this Action

This case is in its infancy.  The Chrimar Plaintiffs filed their Complaint against Ruckus Wireless on July 1, 2015 (Dkt. No. 1), and then filed a First Amended Complaint on September 14, 2015.  (Dkt. No. 12).  According to the Amended Complaint, CMS is the assignee of the four asserted patents, each of which issued between April 10, 2012 and April 28, 2015.[2]  (Dkt. No. 12 at ¶¶ 9, 11, 13 and 15 and Dkt. No. 1 at Exs. A-D).  The Chrimar Plaintiffs allege that Ruckus Wireless infringes those patents by "making, using, offering for sale, selling and/or importing into the United States [accused power over Ethernet products]," including but not limited to the Ruckus ZoneFlex 7962 Access Point and ZoneSwitch 4124 Switch.  (Dkt. No. 12 at ¶ 17, 18, 24, 29, 34 and 50).  The Chrimar Plaintiffs' infringement theory, as expressed in the Amended Complaint, appears to be based on compliance with the IEEE 802.3(af) or (at) PoE standard amendments.  (Dkt. No. 12 at ¶¶ 17, 18).  The Court has not set the initial scheduling conference in this case as of the filing of this Motion.

### B.     Ruckus Wireless Has a Strong Connection to the Northern District of California

Ruckus Wireless is a pioneer and global supplier of advanced systems in the wireless infrastructure market, and offers a range of "Smart Wi-Fi" products and services.[3]  It is headquartered in Sunnyvale, California, and has its principal place of business there.  (*Id.* at ¶ 4).  In fact, all of Ruckus Wireless's U.S.-based corporate offices are in the Northern District of California, except a single warehouse located in Carson, California.  (*Id.* at ¶ 8).  Accordingly, the six departments at Ruckus Wireless that have primary responsibility for the accused products

---

[2] This Motion is based on Ruckus's understanding of the allegations in Chrimar's Complaint, Amended Complaint and the Chrimar Plaintiffs' non-confidential materials from other actions.

[3] Declaration of Dan Rabinovitsj in Support of Motion to Transfer ("Rabinovitsj Decl.") at ¶ 3.

2

are located in and managed from the Northern District of California and include the Engineering, Operations, Product Management, Finance, Marketing and Sales departments. (*Id.* at ¶ 7). Ruckus Wireless employees in these departments have information that is relevant to the development, design, product management, sales, marketing and financial reporting for the accused Ruckus Wireless products. (*Id.* at ¶ 11). Ruckus Wireless anticipates that this information will be material to at least the issues of non-infringement and damages (if applicable). That information is known by the Ruckus Wireless employees, who are identified in the Rabinovitsj Declaration and who are likely to serve as Ruckus Wireless's corporate representatives at trial and/or in response to a Rule 30(b)(6) deposition notice served by the Chrimar Plaintiffs. (*Id.*). All of those employees work in Ruckus Wireless's Sunnyvale, California headquarters. (*Id.*)

Likewise, Ruckus Wireless's electronic data that may be relevant to this lawsuit is located in the Northern District of California or is accessed from third party cloud-based servers by Sunnyvale-based Ruckus Wireless employees in the regular course of their business. (*Id.* at ¶ 13). To the extent that Ruckus Wireless has hard copy documents related to the accused products, such as technical, packaging and marketing documents or exemplary products, those documents and products are located in Sunnyvale. (*Id.* at ¶ 12). Similar to the information known by the identified Ruckus Wireless employees, this documentary and electronic evidence likely will be material to at least the issues of non-infringement and damages.

Ruckus Wireless does not maintain a corporate office in Texas. (*Id.* at ¶ 8).

### C. The Chrimar Plaintiffs Do Not Have a Substantive Presence in this District

CMS is the alleged assignee of the four asserted patents. (Amended Complaint at ¶¶ 9, 11, 13 and 15). CMS is incorporated in Michigan and has had a principal place of business there for twenty-two years. (Yungwirth Decl. at ¶ 2 and Ex. 1). CMS is run by John Austermann, III,

who lives in Michigan and is CMS's President and Chief Executive Officer.  (*Id*. at ¶ 2-4 and Exs. 1-3).  Mr. Austermann also has served as the Chrimar Plaintiffs' corporate representative in recent patent litigation brought by the Chrimar Plaintiffs.  (Yungwirth Decl. at ¶ 12).  Upon information and belief, CMS does not have any employees in Texas, who have knowledge relevant to this action.  (*Id.* at Exs. 2 and 3).

Chrimar Holding is a more recently formed (2011) affiliate of CMS and it is incorporated in Texas.[4]  (*Id.* at ¶ 5 and Ex. 4).  According to the Amended Complaint, Chrimar Holding is the exclusive licensee of the asserted patents.  (Amended Complaint at ¶¶ 9, 11, 13 and 15).  The Amended Complaint alleges that Chrimar Holding's address is "Suite 211-30" in the office building located at 911 NW Loop 281, Longview, Texas.  (*Id*. at ¶ 2).  That address appears to be in an office sharing suite that is shared with as many as twenty companies that currently have registered the use of Suite 211 at that address.  (Yungwirth Decl. at ¶ 6 and Ex. 5).

Upon information and belief, Chrimar Holding has at most a single employee in Texas, who does not appear to have knowledge relevant to this dispute, which is not surprising given that Chrimar Holdings is a captive licensing affiliate of CMS.  The only information allegedly known by the Chrimar Holdings employee relates to "product testing, research and procurement."  (Yungwirth Decl. at Ex. 3).  In other words, Ruckus Wireless has not identified any evidence that either Chrimar Plaintiff actually conducts any business in this judicial District aside from pursuing patent litigation.

    **D.**    **Relevant Non-Party Witnesses and Evidence are Not Located in the Eastern District of Texas**

At least one third party witness with information that is relevant and material to this case, Geoffrey Thompson, resides in the Northern District of California.  (Yungwirth Decl. at ¶ 7 and

---

[4] Chrimar Holding was created in September 2011, only a few weeks before Chrimar commenced a round of patent litigation against several defendants.  (Yungwirth Decl. at ¶ 5).

4

Exs. 2, 3 and 6). Mr. Thompson was the IEEE 802.3 Working Group Chairperson at the relevant time (*id*. at Ex. 6) and in that capacity he had dealings with Mr. Austermann regarding CMS's patents. Mr. Thompson also has extensive knowledge of the development of the IEEE 802.3 Ethernet standard and the Power over Ethernet amendments to that standard, which are relevant to the issues of invalidity and unenforceability. (*Id.*). Mr. Thompson will likely be deposed in this action and may be a witness at trial.

For the sake of completing the record, it is noteworthy that the named inventors, John Austermann and Marshall Cummings, live in the Eastern District of Michigan. (Yungwirth Decl. at Ex. 2 and 3). And CMS's patent counsel at Harness, Dickey & Pierce, PLC are in Michigan. (*Id*. at 2 and 3). From a travel convenience perspective, it takes a similar amount of time to travel from the Eastern District of Michigan to the Northern District of California and the Eastern District of Texas using commercial airlines to fly to DFW airport and renting a car to drive to Tyler. (*Id*. at ¶ 13 and 14 and Exs. 11 and 12).

> **E. The Chrimar Plaintiffs Are Engaged in Patent Litigation Related to this Patent Family in the Northern District of California, the Eastern District of Michigan and this District**

The Chrimar Plaintiffs have been pursuing patent infringement claims in the Northern District of California since at least 2013. In a currently pending action, CMS asserts U.S. Patent No. 7,457,250 (the "'250 Patent"). (*See* Yungwirth Decl. at Ex. 7 [Docket Sheet for Civil Action No. 4:13-cv-01300-GMS, pending in the United States District Court for the Northern District of California (the "California Action")]). The '250 Patent is the parent or grandparent to the four asserted continuation patents in the instant action. (Dkt. No. 1-2, -3, -4 and -5). In the California Action, the Court already has issued a *Markman* Order (*see* Yungwirth Decl. at Ex. 7), and that action is schedule for trial in August 2016. *Id*.

5

The Chrimar Plaintiffs also are pursuing counterclaims for infringement of the four asserted patents in a series of declaratory judgment actions filed in the Eastern District of Michigan between 2013 and July of 2015. (*Id.* at Exs. 8(a), (b) and (c)). Those actions currently are stayed by agreement of the Chrimar Plaintiffs. Of particular note, The Chrimar Plaintiffs notified the court in the Michigan actions "that resolution of the California Action is likely to assist the parties in resolving [the Michigan actions], thereby potentially conserving judicial and party resources." (*Id.* at Exs. 9(a), (b) and (c)).

The Chrimar Plaintiffs also have filed a series of patent actions in this District involving the same patent family. Some of these actions have been dismissed and of those that remain, the first *Markman* hearing is scheduled in March of 2016 and the first trial is scheduled in October of 2016. (*See* Notice Of Readiness For Scheduling Conference, Case No. 6:15-cv-00163 (Dkt. No. 10)). All of the actions currently pending in this District remain at the early stages and in most of the pending actions, a scheduling conference has not been held. (*Id.*).

### III.    ARGUMENT

#### A.    Legal Standard

Section 1404(a) provides that a district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of the parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). The Fifth Circuit made clear that a transfer should be ordered where the transferee forum is "clearly more convenient" than the plaintiff's chosen venue. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (transferred from EDTX to the Northern District of Texas); *In re TS Tech United States Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) (issuing writ of mandamus ordering transfer of action from the EDTX to the Southern District of Ohio). Plaintiff's venue choice is not a factor to be considered in this analysis: "Fifth

Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *Id.* at 1320.

The Fifth Circuit has adopted "the private and public interest factors" test used by many courts to decide transfer requests. *Volkswagen*, 545 F.3d at 315. Where those factors show that another venue is "clearly more convenient," cases in this district not only may, but *should* be transferred. *See id.; TS Tech*, 551 F.3d at 1319. Convenience and costs to parties and third parties, availability of compulsory process, and ease of access to proof generally are important private factors. *See In re Genentech*, 566 F.3d 1338, 1342-45 (Fed. Cir. 2009). And when a substantial number of party and third-party witnesses live in the transferee forum, while few live in the plaintiff's chosen forum, transfer should be ordered. *Id.*; *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

Importantly, the Federal Circuit has rejected efforts by plaintiffs to defeat the § 1404(a) convenience analysis by arguing that judicial efficiency based on other suits pending in an inconvenient district overcomes the clear convenience of the transferee forum. *In re Verizon Bus. Network Serv. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (transfer to a clearly more convenient forum cannot be overcome based on court's prior experience with patent); *In re Morgan Stanley*, 417 F. App'x 947, 949-50 (Fed. Cir. 2011) (finding transfer to a more convenient forum appropriate despite the transferor forum's past experience with one of multiple asserted patents); *In re Apple, Inc.*, 581 F. App'x 886, 889-90 (Fed. Cir. 2014) (finding that prior experience with family of patents cannot overcome balance of other factors favoring transfer),

7

cert. denied sub nom. *EON Corp. IP Holdings, LLC v. Apple Inc.,* 135 S. Ct. 1846, 191 L. Ed. 2d 725 (2015). In other words, prior suits involving the same patent cannot "override a compelling showing of transfer." *In re Verizon*, 635 F.3d at 562.

### B. This Action Could Have Been Brought in California

A threshold question is whether the case could have been brought in the transferee forum. Venue in a patent infringement action is proper in the district where the defendant resides. *See* 28 U.S.C. §§ 1400(b) & 1391. Ruckus Wireless has a principle place of business in Sunnyvale, California and is subject to personal jurisdiction in the Northern District of California. Accordingly, the Chrimar Plaintiffs' infringement claims could have been brought in the Northern District of California and this threshold issue is satisfied.

### C. The Private Interest Factors Favors Transfer

After determining that a case could have been brought in the transferee forum, a district court then considers the private interest factors. *Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 776 (E.D. Tex. 2009). The so-called private interest factors include: (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen*, 545 F.3d at 315.

#### 1. Relative Ease of Access to Sources of Proof

"[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009). The physical location of documents and evidence remains a factor despite advances in copying and electronic data transfer technologies. *Genentech*, 566 F.3d at

8

1345. Generally, in "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (internal quotation marks omitted).

This factor supports transfer because, as noted above, Ruckus Wireless's relevant documents and electronic data are located in the Northern District of California, or are located on third-party, cloud-based servers that are accessed by California-based Ruckus Wireless employees during the regular course of their business. (Rabinovitsj Decl. at ¶ 12-13). This includes documents and data related to the development, design, marketing, sales, product management and financial reporting for the accused products. They are material to the issues of non-infringement and damages that are the subject of discovery in patent cases.

Likewise, Ruckus Wireless's hard copy documents and exemplary products are located in the Northern District of California. (Rabinovitsj Decl. at ¶ 12). Also, certain design, manufacturing and product management documents are located on Ruckus Wireless servers or employee computers in Sunnyvale. (*Id.* at ¶ 13). And with respect to the electronic data on cloud servers, that data is regularly accessed in the normal course of business by U.S.-based Ruckus Wireless employees who are in California. (*Id.* at ¶¶ 9, 10 and 13).

Conversely, the Chrimar Plaintiffs are unlikely to have a significant amount of relevant documents and electronic data in this District, given that their substantive corporate presence is in Michigan. And to the extent that the Chrimar Plaintiffs moved their documents from Michigan to Chrimar Holding's Longview office sharing space, that tactic may have been for the purpose of creating an ephemeral connection to this District.

The Federal Circuit has repeatedly disapproved of such tactics, most recently in *In re Microsoft Corporation*, 630 F.3d 1361 (Fed. Cir. 2011). As the Federal Circuit explained, "[t]he

9

Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *Id.* at 1364. The Court found that transferring documents to an office in the transferor district in anticipation of litigation creates a fiction that should be disregarded in the transfer analysis. *Id.* at 1364-65. *See also, In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (finding that plaintiff was "attempting to game the system by artificially seeking to establish venue" where plaintiff transferred files from Michigan to a Texas office space it shared with other of its counsel's clients); *Software Rights Archive, LLC v. Google, Inc.*, Case No. 2:07-cv-511, 2010 U.S. Dist. LEXIS 73972, at *16 (E.D. Tex. July 22, 2010) (noting that "establishing a principal place of business in this district shortly before filing suit does not create a local interest."). Here, any such transfer of corporate documents from the office of one entity to another for the purpose of thwarting a transfer motion is exactly what the Federal Circuit has discouraged.

Thus, the first private interest factor weighs in favor of transfer.

### 2. Convenience of Witnesses; Cost of Attendance for Willing Witnesses

The convenience and cost of witness attendance is "the single most important factor in the transfer analysis." *Genentech*, 566 F.3d at 1343. Moreover, this factor is to be analyzed in view of the Fifth Circuit's "100–mile" rule, which provides that, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004). The question is not whether "*all* of the witnesses" reside in the transferee forum, but whether a "substantial number" are there. *Genentech*, 566 F.3d at 1345; *see also ACQIS LLC v. EMC Corp.*, No. 6:13-CV-639, 2014 WL 5485900, at *3 (E.D. Tex. Sept. 10, 2014).

In this instance, a substantial number of party witnesses live in the Northern District of California, while few (if any) witnesses live in this District and, therefore, this factor weighs heavily in favor of transfer. *See Nintendo*, 589 F.3d at 1198 ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."). As discussed above, Ruckus Wireless has specifically identified several employees that lead the development, marketing, sale, product management and collection of financial data for the accused products and are located in Sunnyvale including, Pramod Badjate, Fred Harried, Seamus Hennessy, Kash Shaikh, Ian Whiting and Greg Beach. (Rabinovitsj Decl. at ¶ 11). These witnesses and their Sunnyvale, California based teams collectively have knowledge regarding the entire life cycle of the accused products from design and development to the end of sale and are likely to serve as Rule 30(b)(6) corporate representatives and/or trial witnesses for Ruckus Wireless depending on the issues that arise in this case. These witnesses will have to travel over 1,800 miles (at a much greater expense and inconvenience) if the case remains in the Eastern District of Texas. (Yungwirth Decl. at Ex. 11). The location of Ruckus Wireless's witness weighs in favor of transfer.

By contrast, Ruckus Wireless is not aware of *any* willing witness in this District who has information that is relevant and material to the issues in the instant action. Even if the Chrimar Plaintiffs argue that Chrimar Holdings has a newly hired Texas-based employee, who was not identified in their earlier patent actions, that employee is unlikely to have information that is both material and relevant to the claims in this case. (*Id*. at ¶¶ 3-4 and Exs. 2 and 3). Moreover, the presence of a single peripheral employee in Texas does not overcome the wealth of witnesses in California, particularly given Chrimar's limited contacts with Texas. *See DSS Technology*

11

*Management, Inc., v. Apple, Inc.*, 2014 WL 6847569), at *3 (E.D. Tex. Nov. 7, 2014) (J. Love) (the "ephemeral contacts [the plaintiff] has with the EDTX do not merit consideration of the convenience of the witnesses identified by" the plaintiff).

This factor strongly supports a finding that the Northern District of California is the more convenient forum.

### 3. Availability of Compulsory Process to Secure Attendance of Witnesses

For this factor, the Court evaluates whether the Eastern District of Texas or the Northern District of California has subpoena power over non-party witnesses. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009) (district court should have weighed another venue's absolute subpoena power over non-party witness to favor transfer); *In re Apple, Inc.*, 581 F. App'x 886 (Fed. Cir. 2014) (compulsory-process factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue").

Ruckus Wireless has not identified any non-party witnesses with relevant and material information, who are located in the Eastern District of Texas or within 100 miles of Tyler, Texas. The two named inventors of the asserted patents are located in Michigan (Messrs. Cummings and Austermann). (Yungwirth Decl. at Exs. 2 and 3). The prosecuting attorneys for the asserted patents are located in Michigan. (*Id.*). In other words, none of these witnesses are within the subpoena power of this Court.

By comparison, at least one third party, who is likely to have relevant and material information, is within the subpoena power of the Northern District of California. One issue that will be important in this case is the development of the IEEE 802.3 Ethernet standard that predates the four asserted patents and the development of the 802.3(af) amendment that relates to PoE. Information related to this issue is relevant to at least the questions of validity and enforceability. With respect to that issue, one central figure is Geoffrey Thompson, who was the

12

IEEE 802.3 Working Group Chairperson at the relevant time and who had dealings with Mr. Austermann. (*Id.* at ¶ Exs. 2, 3 and 6). Mr. Thompson resides in the Northern District of California (*id.*) and is subject to the subpoena power of that Court. Accordingly, this factor weighs in favor of transfer.

### 4. Other Practical Factors Favor Transfer to California

The final private interest considerations are the practical problems related to the ease, expense, and expediency of trial. These problems "include those that are rationally based on judicial economy." *DSS Tech.*, 2014 WL 6847569, at *4. And although the existence of duplicative suits in different jurisdictions may have practical implications that weigh in favor of or against transfer, the Chrimar Plaintiffs' decision to file numerous suits in this District concerning the same asserted patents cannot overcome an otherwise strong argument for transfer. *In re Verizon,* 635 F.3d at 562 (a compelling showing on the other transfer factors requires transfer regardless of whether the same court is dealing with the same patents in other suits).

Nevertheless, Ruckus Wireless expects the Chrimar Plaintiffs to oppose this motion based on this Court's prior experience handling cases involving the '012 Patent and the pendency of other lawsuits in this District involving the four asserted patents. These arguments, however, cannot overcome the weight of factors that favor a transfer, particularly given that the Northern District of California also has familiarity with the family of asserted patents.

In fact, the District Court in the California Action already has issued a *Markman* Order and is scheduled to try its case involving the '250 Patent prior to the time that this Court conducts its first scheduled trial involving the four asserted patents. Because the four asserted patents all purport to be continuations of the '250 Patent, the Northern District of California's experience with the '250 Patent will give it a head start (*i.e.*, judicial economy) with respect to its handling the issues of non-infringement, invalidity and unenforceability in this action.

13

Moreover, the Chrimar Plaintiffs already have agreed that there are common issues between the California Action and the actions in Michigan that involve the four asserted patents. In fact, Chrimar asked to court in the Eastern District of Michigan to stay those actions on that basis. According to the Chrimar Plaintiffs, a stay of the Michigan cases was appropriate because the case before the Northern District of California "is likely to assist the parties in resolving this case, thereby potentially conserving judicial and party resources." (Yungwirth Decl. at Exs. 9(a), (b) and (c)). Thus, this factor is neutral.

### D. The Public Interest Factors Collectively Favor Transfer

The final factors to be considered are the public interest factors including: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen*, 545 F.3d at 315.

#### 1. Administrative Difficulties Flowing from Court Congestion

The speed with which a case can come to trial and be resolved is a factor in considering a motion to transfer. *Genentech*, 566 F.3d at 1347. However, in situations where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* The most recent Federal Judicial Caseload Statistics show that the median time to resolve a case is 7.9 months in the Northern District of California and 8.4 months in the Eastern District of Texas, and the median time to trial in civil cases is slightly longer in the Northern District of California (31.8 months) compared with the Eastern District of Texas (25 months). (Yungwirth Decl. at ¶ 11 and Ex. 10). Accordingly, this factor is neutral to the extent that the statistics applicable to civil litigation can reasonably be applied to patent litigation.

### 2. Local Interest in Adjudicating Local Disputes

This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *In re Genentech*, 566 F.3d at 1347. Generally, local interests that "could apply virtually to any judicial district or division in the United States," *e.g.*, sale of the accused product that is sold throughout the United States, are disregarded in favor of particularized local interests. *In re TS Tech,* 551 F.3d at 1321.

The Northern District of California has a particular local interest in adjudicating this dispute because Ruckus Wireless's headquarters is located within that district and Ruckus Wireless employs approximately 325 people in that district. (Rabinovitsj Decl. at ¶ 4). Moreover, the accused Ruckus Wireless products are sold and marketed consistently throughout the United States. (*Id*. at ¶ 10). Thus, there is no special significance to the fact that Ruckus Wireless has sold or offered for sale the accused products in this District.

Those facts in combination with the substantial number of party witnesses and amount of evidence located in California, and the absence of any substantive connection to the Eastern District of Texas, confirms that the Northern District of California has a greater local interest in this suit. Thus, this factor weighs in favor of transfer.

### 3. Remaining Public Interest Factors

The remaining public interest factors are neutral given that federal patent law will apply to this case and both Districts are well-equipped to adjudicate patent issues.

## IV. CONCLUSION

Ruckus Wireless requests that the Court transfer this case to the Northern District of California, which is a clearly more convenient forum for the claims in this action to be heard.

Dated: September 21, 2015                         Respectfully submitted,

                                            /s/ *Matthew S. Yungwirth*
                                            Matthew S. Yungwirth (GBN 783597)
                                            msyungwirth@duanemorris.com
                                            Woody Jameson
                                            wjameson@duanemorris.com
                                            **DUANE MORRIS LLP**
                                            1075 Peachtree NE, Suite 2000
                                            Atlanta, GA 30309-3929
                                            Telephone:  404.253.6900
                                            Facsimile:  404.253.6901

                                            ***Attorneys for Defendant***
                                            ***Ruckus Wireless, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of **Ruckus Wireless's Motion to Transfer Venue to the Northern District of California** via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 21, 2015. Any other counsel of record will be served by first class mail.

*/s/ Matthew Yungwirth*
Matthew Yungwirth

## CERTIFICATE OF CONFERENCE

The undersigned herby certifies that counsel for Ruckus Wireless has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conferences required by Local Rule CV-7(h) was conducted on September 17, 2015, via telephone conference with the following participants: Matthew Yungwirth for Defendant and Justin Cohen and Richard Wynne for Plaintiffs. No agreement could be reached.

*/s/ Matthew Yungwirth*
Matthew Yungwirth