IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHRIMAR SYSTEMS, INC., and<br>CHRIMAR HOLDINGS COMPANY,<br>LLC<br><br>*Plaintiffs,*<br><br>V.<br><br>RUCKUS WIRELESS, INC.<br><br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 6:15-CV-638<br>§ JRG-JDL<br>§<br>§ JURY TRIAL DEMANDED<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ruckus Wireless Inc.'s ("Ruckus") Motions to Transfer Venue Pursuant to 28 U.S.C. §1404(a). (Doc. No. 14.) Plaintiffs Chrimar Systems, Inc. and Chrimar Holding Company, LLC ("Chrimar") filed a response (Doc. No. 19) to which Ruckus filed a reply (Doc. No. 21), and Chrimar filed a sur-reply (Doc. No. 23). On December 7, 2015, the Court heard argument on Ruckus's motion. After considering the parties' arguments, the Court **GRANTS** Ruckus's Motion to Transfer Venue (Doc. No. 14).

Ruckus further requested that the Court stay the case pending a decision its motion to transfer (6:15-cv-618, Doc. No. 21). Because the Court has made a determination on Ruckus's motion to transfer, Ruckus's motion to stay (6:15-cv-618, Doc. No. 21) is **DENIED**.

## BACKGROUND

Chrimar Systems Inc. is a Michigan corporation, with a principal place of business located at 36528 Grand River Avenue, Suite A-1, Farmington Hills, Michigan 48335. (Doc. No.

1

12, at ¶ 1.) Chrimar Holding Company, LLC is a Texas limited liability company with a place of business located at 911 NW Loop 281, Suite 211-30, Longview, Texas 75604. Chrimar Systems, Inc. is the owner of the patents-in-suit and licensed those patents to Chrimar Holding Company, LLC. (Doc. No. 19-2, Declaration of John F. Austermann, III, at ¶ 6) ("Austermann Decl.").) Chrimar Holding Company, LLC maintains a single office in Longview, Texas, where it employs one full-time employee, Amanda Barnes. *Id.* at ¶ 7. Ms. Barnes's duties include supporting Chrimar's licensing efforts by conducting product research, product testing, and marketing support. *Id.*

Ruckus is a Delaware Corporation with a principal place of business in Sunnyvale, California. (Doc. No. 14-2, Declaration of Dan Rabinovitsj, at ¶ 4) ("Rabinovitsj Decl.").) Ruckus has approximately 325 employees in its Sunnyvale headquarters and the remaining U.S.-based employees devoted to engineering, finance, operations, product management, and marketing, are located in offices in the Northern District of California. *Id.* at ¶¶ 4, 9. Ruckus specifically identifies six employees who have knowledge regarding the accused products and work at Ruckus's Sunnyvale headquarters. *Id.* at ¶ 11. Ruckus's hard copy documents related to the accused products, such as technical, packaging and marketing documents are located in the Northern District of California. *Id.* at ¶ 12. Ruckus's electronic documents are stored on servers and computers in Sunnyvale, California. *Id.* at ¶ 13. Ruckus also stores documents on cloud-based systems through employees of third-parties located in Sunnyvale, California. *Id.*

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

3

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203.  In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  In this case, Chrimar does not contest that Ruckus conducts business within the Northern District of California and transfer is permissible under § 1404.

I.     **The Private Interest Factors**

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof.  The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer.  *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009).  As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).  To meet its burden, Ruckus must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple,* 743 F.3d at 1379; *see also Invitrogen v. Gen. Elec. Co.,* No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Ruckus maintains that employees with relevant knowledge regarding the accused products are located in the Northern District of California. (Rabinovitsj Decl. at ¶¶ 4, 9.) Ruckus specifically identifies the following six employees with relevant information located in Sunnyvale, California:

- Pramod Badjate, who is the Vice President of Global Engineering in the Engineering department and has knowledge regarding the development and design of the accused products;

- Fred Harried, who is the Chief Procurement Officer and Vice President of Operations in the Operations department and has knowledge regarding the manufacturing and dealings with vendors of components of the accused products;

- Seamus Hennessey, who is the Chief Financial Officer in the Finance department and has knowledge regarding Ruckus Wireless's financial records, costs, profits, etc., related to the accused products;

- Kash Shaikh, who is the Vice President of Global Marketing in the Marketing department and has knowledge regarding how Ruckus Wireless markets the accused products;

- Ian Whiting, who is the Chief Commercial Officer in the Sales department and has knowledge regarding the sales materials used to sell the accused products; and

- Greg Beach, who is the Vice President of Product Management in the Product Management department has knowledge regarding the lifecycles of the accused products.

*Id.* at ¶ 11.

As to its documents, Ruckus contends that the hard copy documents related to the accused products and its electronic data and documents are stored in the Northern District of California. *Id.* at ¶¶ 12-13. Ruckus also maintains that employees of third-parties store relevant documents on cloud-based systems in Sunnyvale, California. *Id.* at ¶ 13.

Chrimar identifies one employee in its Longview, Texas office—Amanda Barnes—who is responsible for supporting Chrimar's licensing efforts, conducting product research, testing products, and marketing. (Austermann Decl. at ¶ 7.) In its briefing, Chrimar contends it has relevant documents in its Longview office, but does not identify what those documents are, or even approximately how many relevant documents are located in Longview. Chrimar also states that its EtherLock® products, which implement the patented technology, are physically located in the Eastern District of Texas. (Doc. No. 19, at 5.) Chrimar maintains it intends to present and demonstrate these products at trial and will make them available for inspection in this District. *Id.* at 6.

Chrimar also maintains that several third parties have relevant information and are located in or near this District. First, Chrimar maintains that Texas Instruments's ("TI") PoE controller is a critical part of the accused products and that TI therefore has "information relevant to Chrimar's infringement claims regarding the Ruckus products that use TI PoE controllers." (Doc. No. 19, at 7.) At the hearing, Chrimar specifically identified two TI employees with relevant knowledge. Second, Chrimar maintains that Ruckus's customers, including Richardson-based AMX and Beaumont-based Lamar University, have documents related to "the accused Ruckus PoE products and the contracts between the organizations." *Id.*

Here, Ruckus has specifically identified the location of its sources of proof in the Northern District of California, including specific employees with relevant knowledge and specific documents related to the accused products. Chrimar has identified only one employee with relevant knowledge and one product located in this District, and has generically asserted there are other relevant documents in this District. Chrimar identifies three third parties,

6

including two customers who it contends will also have documents relevant to the accused products and contractual relationships. While the Court acknowledges that these entities will likely have at least some information relevant to Chrimar's infringement claims, the Court must also acknowledge that "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Accordingly, the Court finds this factor weighs in favor of transfer.

*(b)The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Ruckus identifies one third-party, Geoffrey Thompson, who was the IEEE 802.3 Working Group Chairperson and who is located in the Northern District of California. (Doc. No. 14, at 12-13.) Chrimar contends that Mr. Thompson has served as an expert witness by defendants in other cases filed by Chrimar in this District and before the ITC. (Doc. No. 19, at 12.) Accordingly, Chrimar disputes the necessity to compel him to trial, as Chrimar contends he would likely come willingly. As this Court has previously stated, it will not speculate regarding the willingness of identified third parties in weighing convenience for trial. *Core Wireless*

*Licensing S.a.r.l. v. Apple, Inc.*, Case Nos. 6:14-cv-751-752-JRG-JDL (E.D. Tex. Aug. 31, 2015). Accordingly, the Court accepts that Ruckus has identified a third-party potential witness located in the Northern District of California.

Chrimar specifically identifies three employees of AMX and outlines their relevance to the case as well as their expected testimony. (Doc. No. 19, at 12.) Chrimar contends all three of these potential witnesses work at AMX's Richardson location and are therefore subject to the full subpoena power of this Court. *Id.*, Exs. N, O. Chrimar also contends TI's headquarters in Dallas are within 100 miles of the courthouse and house the data sheet for the chip used in the accused Ruckus Products, as well as engineers with relevant knowledge of the TI chips used in the accused products. (Doc. No. 19, at 13; Ex. P.)[1]

Weighing the one third-party witness specifically identified in the Northern District of California, against the three specifically identified third-party customer witnesses in Texas and the general statements regarding the availability of TI's witnesses, the Court finds this factor is neutral.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

---

[1] Chrimar identified two of these TI employees for the first time at the hearing.

As discussed, Ruckus has specifically identified six employees as willing witnesses with relevant knowledge of the accused products who are located in the Northern District of California. (Rabinovitsj Decl. at ¶ 11.) Ruckus has also identified Mr. Thompson who is located in the Northern District of California. (Doc. No. 14, at 12.) Ruckus maintains that having trial in this District would significantly increase the inconvenience and expense for these witnesses.

Chrimar identifies Ms. Barnes who is a full-time employee located in Longview, Texas who will testify about the marketing of Chrimar's patented EtherLock® products. (Doc. No. 19, at 10-11.) Chrimar also identifies the inventors of the patents-in-suit, John Austermann and Marshall Cummings, who are located in the Detroit area and therefore are closer to this District than the Northern District of California. *Id.* at 11. Chrimar maintains a trial in this District would be more convenient and less expensive for these witnesses. As discussed above, Chrimar has also specifically identified three third-party customer witnesses who are located in this District. (Doc. No. 19, at 12.)

In sum, Ruckus has identified six willing witnesses in the Northern District of California, and Chrimar has named one willing witnesses in this District. In addition, there are three third-party witnesses identified for whom this District would be more convenient, and one for whom the Northern District of California would be more convenient. The convenience of the named inventors, being located in Michigan, is neutral. Thus, on balance, the Court finds this factor weighs in favor of transfer.

*(d) Other Practical Problems*

*(i) Judicial Economy*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. Chrimar contends that judicial efficiency weighs against transfer because of this Court's familiarity with the patents-in-suit and the accused products. (Doc. No. 19, at 13.) There are seven cases filed in this District for which Chrimar contends the same AMX wireless access points manufactured by Ruckus are accused: 6:13-cv-879, -880, -881, -882, -883 (hereinafter "*Chrimar I*" cases); 6:15-cv-163, -164 (hereinafter "*Chrimar II*" cases). The *Chrimar I* cases all involved U.S. Patent No. 8,155,012 ("the '012 Patent"), one of the asserted patents in the instant action. The undersigned presided over all five of those cases and issued a claim construction opinion construing disputed terms of the '012 Patent. All five cases settled prior to the filing of the instant action. One of the *Chrimar II* cases, 6:15-cv-163, involves all four of the asserted patents-in-suit, and the other, 6:15-cv-164, involves two of the patents-in-suit. Both of these cases are assigned to the undersigned. At the time the instant action was filed, the *Chrimar II* cases had been consolidated and were ready for a scheduling conference. In addition, on the same day the instant action was filed, twenty-five additional cases were filed in this District alleging infringement of the same patents, and five recently-filed additional cases involving two of the asserted patents were also pending in this District.

Ruckus maintains that the Northern District of California will have some experience from handling one currently pending case, 4:13-cv-1300, involving a related patent, U.S. Patent No. 7,457,250 ("the '250 Patent"). (Doc. No. 14, at 13.) Prior to the initiation of this action, Judge

White issued a claim construction opinion construing the disputed terms of the '250 Patent. (4:13-cv-1300, Doc. No. 254.)

For purposes of judicial economy, the Court recognizes those benefits that were apparent at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed"). Here, at the time the instant action was filed, the undersigned had previously construed the disputed terms of one of the patents-in-suit in a terminated case, had one case pending with all four asserted patents, six additional cases with two of the asserted patents, and twenty-five co-filed cases with all four of the patents-in-suit asserted. Both the *Chrimar I* and *Chrimar II* cases involved at least some of the accused technology that is alleged to infringe in the instant action. The Northern District of California had one case pending involving a related patent for which it had construed the disputed claim terms.

Given that this Court is the only court with substantive experience with some of the patents-in-suit, and currently has twenty-six pending cases involving all four asserted patents, and six cases involving two asserted patents—all assigned to the same judge—there were at least some apparent judicial economy benefits at the time of the filing that favor this action remaining in this District. Additionally, this Court had some familiarity with accused technology from the pending cases. While it appears the Northern District of California also had some familiarity with a related patent involving different accused technology, this Court's familiarity with the patents-in-suit and the accused technology weighs slightly against transfer.

**II.      The Public Interest Factors**

The parties agree that the public interest factors are neutral, aside from the administrative difficulties flowing from court congestion and local interest considerations.

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Ruckus cites varying general civil litigation statistics and contends this factor is neutral. (Doc. No. 14, at 14.) Chrimar cites the specific cases pending in both districts as exemplary of the time to trial. (Doc. No. 19, at 14-15.) Chrimar contends that the case pending in the Northern District of California involving one related patent has a trial date set for August 22, 2016, forty-one months after it was initiated in the Northern District of California. *Id.* at 15. Chrimar compares that schedule to the schedule of the *Chrimar II* cases (involving all four and two of the patents-in-suit, respectively), which are set for trial in October 2016, less than nineteen months from when those cases were initiated in this District. While generally the Court finds this factor to be speculative in nature, in this instance, the co-pendency of related patent infringement actions is instructive. Where this Court has set trial on its related patent cases in a time frame that moves the case to trial twice as fast as the related case in the Northern District of California (nineteen months compared to forty-one months), the Court finds this factor weighs slightly against transfer.

*(b) The Local Interest in Having Localized Interests Decided at Home*

Ruckus contends that the Northern District of California has a local interest in this case because Ruckus is headquartered there and employs approximately 325 people in that District.

(Doc. No. 14, at 15.) Chrimar maintains that this District has a local interest in these actions because Chrimar Holdings Company LLC is a Texas company that has been based in Longview, Texas for several years and maintains one full-time employee. (Doc. No. 19, at 15.) Ultimately, because Ruckus has identified several individuals whose work relates to the accused technology and who are located in the Northern District of California, the Court finds that the Northern District of California has a local interest in the outcome of the litigation. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). This District also has at least some local interest as Chrimar has an office in this District and employs at least one permanent employee in this District. On balance, this factor weighs in favor of transfer.

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

## CONCLUSION

For the aforementioned reasons, the Court finds that the Northern District of California is a clearly more convenient forum. Here, the location of sources of proof, the convenience of willing witnesses, and the local interest weigh in favor of transfer, while considerations of judicial economy and the administrative difficulties arising from court congestion weighed slightly against transfer. All other factors were neutral. The Court acknowledges that the strongest factor against transfer on the facts before it is judicial economy. In this situation,

13

where Ruckus has made a strong showing in favor of transfer on factors such as the location of sources of proof and the convenience of witnesses, the benefits of judicial economy do not outweigh Ruckus's showing that the Northern District of California is clearly more convenient. Simply put, where Ruckus has shown the Northern District of California is a clearly more convenient forum, the considerations of judicial economy involving this Court's prior experience with an overlapping patent do not override that showing to warrant a denial of transfer. *See In re Verizon*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)"); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation"); *In re Apple*, 581 F. App'x 886, 889 ("judicial economy is just one relevant consideration in determining how administration of the court system would best be served in deciding a transfer motion.") Accordingly, on balance, the Court **GRANTS** Ruckus's motion to transfer (Doc. No. 14). In addition, Ruckus's motion to stay (6:15-cv-618, Doc. No. 21) is **DENIED**.

So ORDERED and SIGNED this 9th day of December, 2015.

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE